Vincent Guinzy, Plaintiff-Appellant, *v.* Curtice Burns, Inc., *et al.*, Defendants-Appellees.

(No. 73-196;

Fifth District—March 28, 1975.

Dick H. Mudge, Jr., of Edwardsville, for appellant.

Kenneth J. Schuessler, of East St. Louis, and Thomas M. Hampson, of Harris, Beach, & Wilcox, of Rochester, New York, for appellee Curtice Burns, Inc.

Mathew L. Welch, of Collinsville, for appellees Angelo Leoni, Joseph A. Butts, and N. Lee Noland.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is an appeal from the Circuit Court of Madison County. The case involves the distribution of the shares of a retirement fund. The Circuit Court found for the defendants and the plaintiff has appealed.

Brooks Foods, Inc. (Brooks), for a number of years operated food-processing facilities in Illinois and Indiana. It was formerly known as the G. S. Suppiger Company (Suppiger). The plan "The G. S. Suppiger Retirement Fund" was created by Suppiger in 1944 (Plaintiff's Exhibit #1). This plan defined company to include its successors in interest. Suppiger's name was changed to Brooks Foods, Inc., several years later. In 1961, P. J. Ritter Company (Ritter), another food processing company located in Bridgeton, New Jersey, acquired a controlling interest in

Brooks. As a part of that acquisition, on March 30, 1961, the "Plan" was amended so as to reflect certain changes made necessary by the acquisition by Ritter. The name of the "Plan" was also changed thereby to "Brooks Foods, Inc., Employees Profit Sharing Plan." These 1961 amendments constitute a completely new "Plan" (Plaintiff's Exhibit #4).

In 1967 Curtice-Burns acquired a controlling interest in Ritter, and by that action also gained a controlling interest in Brooks. For a little over 2 years following that acquisition, Ritter continued as a subsidiary of Curtice-Burns, and Brooks continued as a subsidiary of Ritter. However, as of March 31, 1969, the separate business operations of Brooks and Ritter were consolidated and merged into the business operations of Curtice-Burns. Brooks assets were transferred to Ritter and Ritter assumed its liabilities. Immediately thereafter, Ritter's assets were transferred to Curtice-Burns and Curtice-Burns assumed Ritter's liabilities. In this respect, neither division was shut down nor was there any interruption in the continued employment of any employee forming a part of each division. Since April 1, 1969, the businesses formerly conducted by Ritter and Brooks as separate corporate entities have been continued as operating divisions of Curtice-Burns, Inc., with the same management and operating facilities as previously utilized by Ritter and Brooks.

A stipulation of fact was entered into by the parties which provided, in part, the following:

> "Prior to the liquidation of Brooks and Ritter, Thomas M. Hampson, its attorney, advised the Board of Directors of Brooks that some action should be taken with respect to the Brooks employees profit-sharing plan, the ["Plan"], since the separate corporate existence of Brooks was about to be terminated. Hampson, as counsel further advised the Board of Directors at that time that, pursuant to Section 11 of the "Plan" Brooks had reserved the right to amend the "Plan" through actions of its Board of Directors.

> At that time, the "Plan" was in existence in the form as indicated in Plaintiff's Exhibit No. 4, dated March 30, 1961 which was about the time of the acquisition of Brooks by Ritter. The "Plan" was later amended as indicated by Plaintiff's Exhibits 5 and 6.

> During the discussion of the matter in March of 1969 and prior to the liquidation of Brooks and Ritter, the Board of Directors of Brooks had a special meeting on March 25, 1969 (Plaintiff's Exhibit No. 9) and agreed unanimously that the benefits which had heretofore accrued to the employees of Brooks under the "Plan" should be preserved and made available to those employees at such time as they reach retirement or were otherwise entitled to receive benefits under the "Plan" as it was then constituted. Pursu-

ant to the direction of the Board of Directors, certain amendments to the "Plan" were adopted so as to provide for a freezing of the "Plan" upon liquidation of the Company as reflected in the Minutes of that meeting, (Plaintiff's Exhibit 9) and made a part of the 1969 amendment, (Plaintiff's Exhibit 6).

On March 31, 1969 and thereafter, no further contributions were to be made to the "Plan" and the "Plan" continues to be administered by the Committee, the defendants in this action and in that form, (Plaintiff's Exhibit No. 6). As of April 1, 1969, the employees of Brooks, including the plaintiff, Vincent Guinzy, became employees of Brooks Food Division of Curtice-Burns, Inc.

It was the intention and direction of the Board of Directors of Brooks at its meeting on March 25, 1969 to provide that a former Brooks employee would continue to work for Curtice-Burns, Inc., as an employee of the Brooks Food Division and by amendment to the Curtice-Burns Pension Plan, participate in the Curtice-Burns Pension Plan from April 1, 1969 until such time as he retired at age sixty-five (65) or would otherwise become eligible for benefits, and he would then be entitled both to benefits under the Brooks Plan for service with Brooks prior to April 1, 1969 and to benefits under the Curtice-Burns, Inc., Plan for service from April 1, 1969 to the date of his retirement or otherwise becoming eligible; prior employment with Brooks was included in determining their years of continuous service required by the Curtice-Burns Plan. The Board of Directors of Brooks at its meeting on March 25, 1969 made no change in the powers and duties of either the Trustee or the Committee Members which administered the Brooks Plan. The Pennsylvania Bank Trust Company was designated the Trustee under the Plan in 1961 and presently is serving as Trustee, nor has there been any change in the Trustee or the Members of the Committee of the Plan."

The question is did the sale of Brooks Foods, Inc., assets and assignment of the "Plan," as amended, to Curtice-Burns, Inc., and the subsequent dissolution of Brooks Foods, Inc., thereby terminate the "Plan" and entitle Guinzy to immediate payment of his interest in the "Plan" as amended.

■■ Initially it must be pointed out that the courts of this State have consistently held that the rights of the participants under a private pension plan are governed by the terms of the plan. *Cowles v. Morris & Co.*, 330 Ill. 11, 161 N.E. 150; *Anderson v. Seaton*, 14 Ill.App.2d 53, 143 N.E.2d 59.

The plaintiff's allegation is that the "Plan" was a legal and binding

contract between the employer and the plaintiff, that it was executory in nature containing mutual promises and consideration, and that the liquidation of Brooks Foods, Inc., terminated the "Plan" and that the plaintiff immediately became entitled to his vested share of the trust funds.

In support of his position the plaintiff cites the case of *Delaware Trust Co. v. Delaware Trust Co.* (1966), 43 Del. Ch. 186, 222 A.2d 320, which said that although the company may amend its pension plan, it may not amend it so as to defeat its original purpose or to deprive the employee of benefits already accrued or to which he has a vested interest.

In this case the defendant does not seek to defeat the original purpose of the plan, which was to provide for the ultimate retirement of its employees, but only to defer payment of the benefits of the plan until the employee retires so the purpose of the plan will be effectuated.

The case law supports the position taken by the defendant. The pension here was noncontributory in nature, meaning that the employees did not make monetary contributions to the "Plan." The employer clearly had the right to prescribe the manner and time for the payment of benefits under the "Plan." See *Anderson v. Seaton, supra.*

According to the terms of this "Plan" the plaintiff has not qualified because he has not terminated his employment with the successor of Brooks Foods, Inc., Curtice-Burns, Inc.

■■ We find that the right to amend the "Plan" was reserved, that the "Plan" has been amended and that no reason has been shown why the "Plan" should not be carried out in accordance with its terms as amended.

We therefore affirm the decision of the Circuit Court of Madison County.

G. MORAN, P. J., and EBERSPACHER, J., concur.